IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

DEAN A. HAGEN,

                        Plaintiff,                      OPINION AND ORDER

    v.                                                                    12-cv-00859-wmc

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                        Defendant.

      Pursuant to 42 U.S.C. § 405(g), plaintiff Dean Hagen seeks judicial review of a final administrative decision of the Commissioner of Social Security that Hagen was not disabled within the meaning of the Social Security Act.  For the reasons set forth below, the court will remand the case to the Commissioner for further proceedings.

## FACTS[1]

### I.  Procedural History

      On February 23, 2010, Hagen applied for Disability Insurance Benefits ("DIB"), alleging that he became disabled on December 23, 2008. (AR. 179-85). The agency denied his application initially (AR. 108, 110-13), and on reconsideration (AR. 109, 114–17). Hagen then requested a hearing (AR. 118-19). On November 3, 2011, he appeared and testified before Administrative Law Judge Lisa Groeneveld-Meijer (AR. 71-99). On December 13, 2011, the ALJ determined that Hagen was not disabled because he could perform a significant number of light jobs (AR. 13-27). Hagen requested

---

[1] The following facts are drawn from the administrative record, which can be found at dkt. #11.

Appeals Council review (AR. 8-9). On September 25, 2012, the Appeals Council declined, making the ALJ's decision the Commissioner's final decision in this matter. Hagen filed a timely complaint for judicial review in this court pursuant to 42 U.S.C. §405(g).

**II.  Relevant Medical Evidence**

On February 27, 2008, Hagen's primary care physician, Gregory Leitheiser, M.D., treated Hagen for depression. At this time, Dr. Leitheiser noted that Hagen had suffered from depression "for years" (AR. 338). Over the next several months, various drugs were prescribed in order to try and help Hagen.  Among other things, he increased his dosage of Amitriptyline to 50 mg., prescribed Lexapro in May (AR. 337), Wellbutrin in June (AR. 336), and both drugs in July, at which time it was noted that Hagen was anxious and not sleeping well (AR. 335).

Dr. Leitheiser also referred Hagen to Robert Brunner, MSW, LCSW, for counseling, who reported on November 21, 2008, that Hagen "continues to feel depressed despite all the different medications he has taken in the past." Using a test for Attention Deficit Disorder (ADD), Brunner thought that Hagen's depression could be stemming from untreated ADD (AR. 309). Accordingly, Dr. Leitheiser prescribed Adderall in November 2008 and renewed that prescription in March 2009 (AR. 328, 334).

By November of 2010, Hagen was also seeing Timothy Patterson, D.O., a Veterans Administration staff psychiatrist, who reported that Hagen failed to respond to the Adderall and noted that it had the undesirable side effect of causing Hagen to shake

(AR. 644). On November 29, 2010, Dr. Patterson found Hagen "tense and on edge about 50% of the time." Dr. Patterson further noted that Hagen's activities were limited by two herniated discs, that when he tries to be productive, his heart starts to race, his chest feels tight, and that and when he is anxious, he gets blurred vision experiences numbness and tingling in his hands, as well as dizziness. Hagen also felt like he is tipping over if he bends over to pick something up, and is "fearful of losing control or dying." (*Id.*)

In his progress note at that time, Dr. Patterson wrote: "[Hagen] has trouble enjoying things, feels detached or distant from emotions, and just goes through the motions each day…. concentration is down significantly and easily distracted. Denies day dreaming. States his mind is just blank" (AR. 645). Dr. Patterson concluded that Hagen suffered from "GAD" (generalized anxiety disorder) and chronic depression with a "GAF" (Global Assessment of Functioning) score of 45 (AR. 648).[2]

On April 10, 2011, Dr. Patterson completed a form outlining Hagen's mental functional limitations. He found that Hagen was occasionally unable to remember locations and work-like procedures or to understand and remember short, simple instructions; had occasional difficulty carrying out short and simple instructions, completing a normal workday and workweek w/o interruption from psychological based

---

[2] A GAF score is a psychiatric measure of a patient's overall level of functioning. A GAF between 41 and 50 indicates "Serious symptoms (*e.g.,* suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (*e.g.,* no friends, unable to keep a job)." In turn, a GAF between 51 and 60 reflects "Moderate symptoms (*e.g.,* flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (*e.g.,* few friends, conflicts with peers or co-workers)." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, Text Revision (DSM-IV-TR) 34 (4th ed. 2000).

3

symptoms, occasional difficulty performing at a constant pace without an unreasonable number and length of rest periods; and was occasionally unable to carry out detailed instructions. Hagen also had occasional difficulty interacting appropriately with the general public; was occasionally unable to respond appropriately to changes in the work setting; and had occasional difficulty traveling in unfamiliar places or using public transportation. Dr. Patterson added that the "amount of vestibular dysfunction [Hagen] is experiencing may have an influence on anxiety and depression depending on his ability to cope," and "though he is improving emotionally with medication, there is an interrelationship with physical illness of vestibular dysfunction that . . . may increase anxiety and depression, particularly if under scrutiny or has time limited tasks to complete at work." (AR. 711-12). Dr. Patterson also found that Hagen had moderately restricted limitations in his activities of daily living, had moderate difficulties in maintaining social functioning, and had moderate deficiencies in maintaining concentration, persistence, or pace (AR. 713).

On September 12, 2011, Dr. Patterson further reported that Hagen continued to have chronic pain in his spine and ribs, that his mood is reflective of this pain and that Hagen said "pain controls my life" (AR. 771). On December 19, 2011, Dr. Patterson noted that Hagen had "masked anxiety and secondary dysthymic depression due to chronic pain." On January 4, 2012, Henry Ogden, PsyD., quoted Hagen as saying that he stayed in bed for three days and had fitful sleep following their last session due to depression (AR. 840–841).

Two non-examining, state-agency physicians and a state-agency psychologist also

4

provided physical and psychological assessments based on their review of the record more than a year before the November 3, 2011, Administrative hearing. On May 26, 2010, Pat Chan, M.D., determined that Hagen could occasionally lift 20 pounds and could frequently lift 10 pounds. However, Dr. Chan also wrote that Hagen could stand for only ten minutes or walk for minutes before needing a break (AR. 488). Dr. Chan further found that Hagen was capable of occasional kneeling; had no visual or environmental limitations; and should avoid even moderate exposure to hazards such as machinery and heights (AR. 485). Dr. Chan concluded that "the claimant's allegations of limitations related to these impairments to be fully credible" yet found that he can perform medium RFC with the only restrictions being stooping and occasional exposure to heights and hazards (AR. 488).

On September 28, 2010, Syd Foster, D.O., determined that Hagen could occasionally lift 50 pounds and frequently lift 25 pounds, as well as that he could stand or walk for six out of eight hours. The only limitation Dr. Foster found was that Hagen should avoid all exposure to hazards due to chronic dizziness and feeling of disequilibrium with movement and associated migraines. Dr. Foster discounted the August 19, 2009, assessment of Dr. Bixler that Hagen was not able to work because (1) the statement was written when Bixler initially treated Hagen and (2) had only a brief treating relationship with Hagen. Dr. Foster also found "the claimant's statements regarding his symptoms are credible, but functioning is not reduced to disabling severity." Dr. Foster concluded that Hagen had a medium RFC with no exposure to unprotected heights or hazardous machinery (AR. 565–571).

5

On June 3, 2010, Roger Rattan, PhD, completed a Psychiatric Review Technique form (PRTF), assessing Hagen only for the categories of "Organic Mental Disorders" (20 CFR Part 404, Subpart P, Appendix 1, Listing of Impairments §12.02) and "Affective Disorders" (Listing of Impairments §12.04) (AR. 490–506). Dr. Rattan found that Hagen was only mildly limited in his activities of daily living and in maintaining social functioning, and moderately limited in maintaining concentration, persistence, or pace. Dr. Rattan ultimately concluded that Hagen was capable of performing the basic mental demands of unskilled labor (AR. 506). Finally, on September 29, 2010, Deborah Pape, Ph.D., completed a "Case Analysis" in which she affirmed Dr. Rattan's conclusions (AR. 573).

**III. Administrative Law Judge's Decision**

At step one, the ALJ found Hagen had not engaged in substantial gainful activity since December 23, 2008 (AR. 15). At step two, the ALJ identified severe physical and mental impairments (AR. 15). At step three, the ALJ found that Hagen did not have an impairment or combination of impairments that met or medically equaled the severity of any listed impairment (AR. 16-18). In making this determination, the ALJ considered Listing 1.04, for Hagen's spinal problems, and 2.10 for his hearing loss (AR. 16). The ALJ also considered Listing 1.02 for Hagen's degenerative joint disease (AR. 17). The ALJ determined that Hagen had moderate limitations in concentration, persistence, and pace and that he had not experienced any episodes of decompensation of extended duration (*Id*).

Between steps three and four, the ALJ determined Hagen's residual functional capacity ("RFC") permitted him to perform light work that allowed occasional stooping, frequent handling, and prohibited overhead work (AR. 18). The ALJ also found that Hagen needed to avoid potential hazards, like moving machinery and unprotected heights (AR. 18). Due to his mild hearing loss, the ALJ also limited Hagen to jobs that did not require a fine hearing capability. Due to Hagen's mental limitations, the ALJ found that he could perform only routine, repetitive tasks that involved only simple, work-related decisions in an environment free of fast-paced production requirements. (AR. 18). This work environment could also have few, if any, day-to-day workplace changes and could involve only occasional interaction with the public and co-workers (AR. 18). The ALJ also found Hagen's own statements about the extent of his limitations not credible (AR. 18).

At step four, the ALJ found that Hagen was unable to perform any of his past relevant jobs (AR. 26). At step five, the ALJ relied on the testimony of the vocational expert, in conjunction with the medical-vocational guidelines ("the Grid"), to find that Hagen was not disabled because he could perform a significant number of light jobs (AR. 26-27).

## OPINION

When a federal court reviews a final decision by the Commissioner of Social Security, the Commissioner's findings of fact are "conclusive" so long as they are supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence means

7

"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). When reviewing the Commissioner's findings under § 405(g), the court cannot reconsider facts, re-weigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the administrative law judge. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

Even so, a district court may not simply "rubber-stamp" the Commissioner's decision without a critical review of the evidence. *See Ehrhart v. Secretary of Health and Human Servs.*, 969 F.2d 534, 538 (7th Cir. 1992). The ALJ must also explain his "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Id. See Herron v. Shalala*, 19 F.3d 329, 333–34 (7th Cir. 1994). When the administrative law judge denies benefits, he must build a logical and accurate bridge from the evidence to his conclusion. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001).

Since Hagen challenges the ALJ's decision on several grounds, each is addressed below.

### I. Dr. Paterson – Treating Psychiatrist

Hagen challenges the ALJ's analysis for failing to properly assess a treating doctor's medical opinion. Hagen argues that this error not only warrants remand, but had the ALJ properly evaluated Dr. Paterson's medical opinion, a finding of disability was compelled. While the court is reticent to grant the requested relief in full, there are deficiencies in the ALJ's analysis making remand appropriate.

As a starting point, the Seventh Circuit has repeatedly addressed the standards

that the Commissioner must follow when weighing the opinions from a treating physician. Most recently, in *Jelinek v. Astrue*, 662 F.3d 805 (7th Cir. 2011), the court explained a treating physician's opinion "that is consistent with the record is generally entitled to 'controlling weight' . . . [and] an ALJ who chooses to reject a treating physician's opinion must provide a sound explanation" for doing so. Id., at 811 (citing 20 C.F.R. § 404.1527(d)(2)); *cf. Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012) (ALJs may discount medical opinions based solely on the patient's subjective complaints) *Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010); *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010); *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007). Next, "[i]f an ALJ does not give a treating physician's opinion controlling weight, [SSR 06-03p] requires the ALJ to consider the (1) length, nature, and extent of the treatment relationship, (2) frequency of examination, (3) the physician's specialty, (4) the types of tests performed, and (5) the consistency and supportability of the physician's opinion." *Scott v. Astrue*, 647 F.3d 734, (7th Cir. 2011); *see also* 20 C.F.R. § 404.1527(d)(2).

Here, the ALJ's analysis of Dr. Paterson's medical opinion is addressed on several pages of the decision (AR 19, 23, 24). As an initial matter, the ALJ's analysis seems to conform with 20 C.F.R. § 404.1527(d)(2) -- *e.g.*, length, nature and frequency are accounted for when the ALJ recognized that Dr. Paterson has treated Hagen "every six weeks over the past nine months for anxiety and depression (AR. 19). The ALJ also notes Dr. Paterson's specialization and found his evidence inconsistent with other medical evidence in the record (AR. 23-24).

While this superficial analysis would seem to address many of the factors

identified in the regulations, the ALJ went on to note that a core reason for discounting Dr. Paterson's evidence lies in the fact he disclaimed any definitive medical opinion, stating that he "cannot provide an answer to . . . questions regarding depression/anxiety without psychological testing, occupational testing and vocational rehabilitation evaluation" (AR. 24). But this criticism begs an obvious question. Having acknowledged that Dr. Paterson required further testing to support his opinion as the treating physician, why didn't the ALJ seek further testing in the areas that Dr. Paterson suggested. Indeed, under Seventh Circuit case law, the ALJ has an obligation to do so, especially where a finding is adverse to the claimant's application for benefits. *See Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000)("[a]lthough a claimant has the burden to prove disability, the ALJ has a duty to develop a full and fair record"); *see also Richards v. Astrue* , 370 Fed. Appx. 727, 731, 2010 WL 1443893, at *3 (7th Cir. Apr. 13, 2010) ("Although an applicant for disability benefits bears the burden of proving that she is disabled, an ALJ may not draw conclusions based on an undeveloped record and 'has a duty to solicit additional information to flesh out an opinion for which the medical support is not readily discernable.").

In *Smith*, the Seventh Circuit held that an ALJ had improperly discredited a treating physician's opinion, asserting that the physician failed to order X-rays to confirm the presence of arthritis. 231 F.3d at 433-437. The Seventh Circuit held that if the ALJ "was concerned the medical evidence was insufficient" it had an obligation to seek out the relevant information once the treating physician had put the medical condition in the record. *Id.* at 433. The court held that "[f]ailure to fulfill this obligation is 'good cause'

to remand." *Id.* at 437.

Similarly, there is good cause to remand in this case. The ALJ expressly noted that the treating physician requires further testing to confirm his medical opinion regarding psychological analyses (AR. 24). In circumstances where the ALJ already found that Hagen has moderate limitations in concentration, persistence and pace, the court finds that further testing and Dr. Paterson's medical opinion could have a material effect on Hagen's application. To that end, the ALJ should seek further test results on remand regarding Hagen's anxiety and depression consistent with Dr. Paterson's medical notes, including psychological testing, occupational testing and a vocational rehabilitation evaluation.

## II. Credibility Determination

Hagen further contends that the ALJ erred in assessing his credibility. Specifically, Hagen challenges the discounting of his credibility based on isolated activities that the ALJ viewed as purportedly inconsistent with the severity of his condition (AR. 16–17, 19, 24). Chief among these is a trip to Pennsylvania that Hagen took in August 2011 to visit his son and grandson. (AR 748). Hagen contends that the ALJ improperly discounted his credibility relying on these isolated incidents. The court agrees.

While the ALJ was certainly permitted to consider Hagen's daily living status, this evidence must be viewed in context with other evidence in the record. *See Williams-Overstreet v. Astrue*, 364 F. App'x 271, 276-77 (7th Cir. 2010). Simply because a claimant has managed to partake in some isolated activities, an ALJ may not summarily conclude

11

that the severity of his claimed condition is not credible. In *Carradine v. Barnhart*, 360 F.3d 751 (7th Cir. 2004), for example, the Seventh Circuit remanded when the ALJ "failed to consider the difference between a person's being able to engage in sporadic physical activities and her being able to work eight hours a day five days a week." *Id*. at 755.

As with the claimant in *Carradine*, Hagen does not "claim to be in wracking pain every minute of the day." *Id.* When he feels better, Hagen can watch T.V., do some chores, and even go on a rare trip. In this case, the trip to Pennsylvania was intended as a form of therapy. This is reflected in Hagen's uncontroverted testimony that ". . . my parents thought [the flight] would be beneficial for me, so they bought me [an] airplane ticket to get out there." (AR. 95.) As in *Carradine* and like cases, the court finds that Hagen's limited activities are wholly consistent with his disability. Accordingly, the ALJ's reason for discounting the severity of his limitations constituted error. Specifically, it was improper for the ALJ to rely on Hagen's one-off flight to Pennsylvania, along with the performance of some chores, as undermining his credibility. *See Gentle v. Barnhart*, 430 F.3d 865 at 867 ("The administrative law judge's casual equating of household work to work in the labor market cannot stand.")[3]

---

[3] As such, the ALJ's failure to examine, much less discuss, how Hagen's limitations translate into a full-time work setting demonstrate deficiencies in the ALJ's decision warranting remand.

**III. Remaining Issues**

Hagen raises additional issues related to the sufficiency of the underlying proceedings. Because the court has already found deficiencies in the ALJ's reasoning as set forth above, each of which could well impact the ALJ's RFC determination on remand, it need not and will not address the merits of these other arguments except to provide the following limited guidance. With respect to Hagen's claim of cherry-picking and the ALJ's purported failure to address Hagen's dizziness, the Seventh Circuit has explained that "an ALJ may not selectively discuss portions of a physician's report that support a finding of non-disability while ignoring other portions that suggest disability." *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010). On remand, the ALJ may be well served in re-examining the medical evidence referred to Hagen's brief, since it is unclear from ALJ's decision that she did so (or did not do so). (Dkt. No. 16 at 22-23). This would be especially important if greater weight is afforded to Dr. Peterson's opinion on remand, since he indicated that Hagen has problems with dizziness (AR 729-730).

With respect to Hagen's claim that the ALJ failed to assess the aggregate effect of the his mental and physical impairments (and intensity of same), the ALJ is also encouraged to make a fresh global assessment, particularly with the benefit of any (1) new credibility findings with respect to Hagen and (2) additional testing that Dr. Peterson may undertake in formulating an opinion on Hagen's mental limitations.

Finally, it is worth noting that in commenting on these issues the court does not intend to suggest that a different end result should be reached on remand. Rather, the court encourages the parties and the ALJ to consider the evidence and issues anew,

including the deficiencies identified in this order. *See Pierce v. Colvin*, 739 F.3d 1046, 1051 (7th Cir. 2014) (the court need not address a plaintiff's remaining argument, but noting that on remand the ALJ will need to take a "fresh look" at the RFC and vocational questions after the credibility issue has been re-evaluated); *see Mollett v. Astrue*, No. 3:11–CV–238 2012 WL 3916548, at *9-10 (N.D. Indiana Sept. 7, 2012) (stating that "[b]ecause the ALJ's error regarding the hypothetical questions requires remand, the court need not consider the claimant's arguments regarding the remaining issues); *Madrid v. Barnhart*, 447 F.3d 788, 792 (10th Cir. 2006) (when the ALJ's error affected the analysis as a whole, court declined to address other issues raised on appeal).

ORDER

IT IS ORDERED that plaintiff's motion to amend the complaint, (dkt. #25) is GRANTED and the decision of defendant Carolyn W. Colvin, Commissioner of Social Security, denying plaintiff Dean A. Hagen's application for disability benefits is REVERSED AND REMANDED under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion. The clerk of court is directed to enter judgment for plaintiff and close this case.

Entered this 30th day of September, 2014.

BY THE COURT:

/s/

WILLIAM M. CONLEY
District Judge